IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LINDA SAWYER (aka Aarons),[1] | § | |
| | § | No. 3, 2019 |
| Respondent Below– | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below–Family Court |
| | § | of the State of Delaware |
| DEPARTMENT OF SERVICES FOR | § | |
| CHILDREN, YOUTH AND THEIR | § | File Nos.  18-08-08TN |
| FAMILIES/DIVISION OF FAMILY | § | CN08-02835 |
| SERVICES, | § | |
| | § | Petition Nos.  18-24769 |
| Petitioner Below– | § | 17-18676 |
| Appellee. | § | |

Submitted:  June 19, 2019
Decided:    September 12, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## <u>**ORDER**</u>

Upon consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), her attorney's motion to withdraw, the appellee's response and motion to affirm, and the Child's attorney's response, it appears to the Court that:

(1)    This is an appeal from the Family Court's December 5, 2018 order that terminated the parental rights of Linda Sawyer (aka Aarons) ("the Mother") in her son ("the Child").

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

(2) The Mother's counsel has filed a no-merit brief and a motion to withdraw under Supreme Court Rule 26.1(c). Counsel asserts that, based on a conscientious review of the record, there are no arguably appealable issues. Counsel informed the Mother of the provisions of Rule 26.1(c), provided her with a copy of his motion to withdraw and the accompanying brief, and informed the Mother of her right to supplement counsel's presentation. Counsel submitted the Mother's concerns as "Appellant's Points" in the brief on appeal. The appellee, the Department of Services for Children, Youth and Their Families/Division of Family Services ("DFS"), and the Child's attorney have responded to the Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) The Child was born in 2008 and is now eleven years old. In June of 2017, DFS received a report that emergency services had been called to a public park in Wilmington where the first responders found the Mother extremely intoxicated with the Child in her care. The Mother was transported to Christiana Hospital where she was sedated due to her high level of intoxication and combativeness. The Child reported to DFS that his father lived in Wilmington but he was unable to provide any contact information for either his father or any other family member. The Family Court granted *ex parte* custody of the Child to DFS on June 21, 2017. With

2

the filing of DFS's dependency and neglect petition on June 22, 2017, the mandated hearings ensued.[2]

(4) At the preliminary protective hearing on June 28, 2017, the Mother stipulated the Child was dependent in her care based on the Mother's unstable housing situation and an acute alcohol dependency that required treatment. The Family Court found that the Child was dependent and that it was in his best interests to remain in DFS's care and custody. The Family Court also found that DFS had made reasonable efforts to prevent the removal of the Child from the home and to reunify the family.[3] The Family Court concluded that placement of the Child in the home of a relative was not appropriate because there were no relatives in Delaware known to be available and willing resources for placement.

(5) On July 21, 2017, the Family Court held a dispositional hearing. The Child's father did not appear and DFS had been unable to ascertain his current address. DFS had developed and reviewed with the Mother a case plan for reunification with the Child. The Mother's case plan required that she: (i) undergo a substance abuse evaluation; (ii) obtain and maintain housing and financial stability; (iii) undergo a mental health evaluation; (iv) resolve her pending legal matters; and

---

[2] When a child is removed from home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. R. 212-219.

[3] Under a September 20, 2016 protection from abuse order the Mother had obtained against the Child's father, the Mother was the Child's legal guardian.

(v) address her experience as a victim of domestic violence. The Mother had disclosed to DFS that she had previously been diagnosed with bipolar disorder and had been inconsistently taking her medications after her Medicaid had been deactivated. The Mother also acknowledged that she recently struggled with alcohol abuse.

(6) At the time of the dispositional hearing, the Mother was unemployed and living with a friend. DFS did not approve of the home as a residence for the Child or as an acceptable environment for visitation. The Mother had been regularly visiting with the Child on a weekly basis. DFS was exploring the option of placing the Child with his maternal grandmother. Although the maternal grandmother was then residing in a shelter in New York, she planned to move into her own residence and wished to be a resource. The Mother testified that the Child's adult half-sister also lived in New York and the Family Court encouraged DFS to arrange for the two to have regular one-to-one contact via video. The Family Court found DFS had made reasonable efforts to reunify the family.

(7) On October 23, 2017, the Family Court held a review hearing. DFS had not made an effort to engage the Child's father in the proceedings. The Mother was receiving mental health services through Connections but it was unclear what substance abuse services she was receiving. Although the Mother now lived in a shelter, she remained unemployed and needed to obtain employment to maintain her

4

placement. Since the last hearing, the Mother had received inpatient mental health treatment for roughly ten days reportedly because she was still abusing alcohol and was having suicidal thoughts. The Mother continued to have weekly visits with the Child and had met with a family interventionist the week before the hearing. The Family Court reserved making a finding about reasonable efforts to reunify before DFS made additional efforts to engage the Child's father and to assess what progress, if any, the Mother had made in her recovery.

(8) The Family Court held another review hearing on February 1, 2018. The Mother had voluntarily attended two days of an intensive outpatient treatment program but had arrived inebriated on the second day. In December 2017, DFS suspended visits after the Mother appeared intoxicated during a visit with the Child and during a therapy session with the Child's therapist. On December 21, 2017, the Mother was admitted to an inpatient program, and her visits with the Child resumed. The Mother had completed the program the day before the review hearing and had been released to Madre House in Felton, where she would receive help with medication management as well as assistance in securing employment and housing. DFS wanted the Mother to focus on maintaining sobriety and achieving mental health stability before addressing the other elements of her case plan. DFS had spoken with potential placement resources—the Child's maternal grandmother and maternal uncle—who had recently relocated from a shelter to stable housing in the

5

Bronx. The Family Court found DFS had made reasonable efforts to reunify the family.

(9) At the permanency hearing held on April 23, 2018, the Mother had made significant progress on her case plan. She had been sober for approximately five months and was regularly attending Alcoholics Anonymous meetings. The Mother was working at McDonald's, and she and her fiancé—with whom DFS had no issues or concerns—had obtained housing. The Mother was scheduled to begin parenting classes, was in counseling, and was taking medication to address her mental health issues. Supervised visitation with the Child continued to take place on a weekly basis. Although DFS asked the court to change the goal to concurrent goals of reunification and termination of parental rights/adoption, the Family Court decided that the goal would remain solely reunification. The Family Court made this determination based on the Child's attachment to his parents and the Mother's progress in maintaining sobriety, securing housing and employment, and fostering her relationship with the Child.

(10) The Family Court held a review hearing on August 2, 2018. Unfortunately, the Mother had relapsed and was again struggling with her sobriety. After the Mother attended a spring concert at the Child's school where she smelled of alcohol and appeared to be under the influence, DFS suspended visits with the Child until a team meeting could be held. When the team members arrived at the

Mother's home for the meeting, the Mother was stumbling and had trouble speaking. Open beer cans were found on her bedroom floor. It was recommended that the Mother enroll in a rehabilitation program, which she did on June 12, 2018. DFS was unable to verify whether the Mother had completed the program.

(11) Mother's fiancé, with whom she had been living, had obtained a protection from abuse order against her. The Mother had also lost her job at McDonald's and was now unemployed. On July 31, 2018, an arrest warrant had been issued for the Mother for criminal contempt for violation of a domestic violence order. The Mother had missed several parenting classes as well. But, the Mother testified she continued to see her therapist and that she was working with vocational rehabilitation services to obtain employment. DFS continued to have contact with the Child's maternal grandmother, who had moved into an apartment in the Bronx.

(12) The Family Court directed DFS to be more proactive with its efforts to place the Child with his relatives. The Family Court found DFS had made reasonable efforts to reunify the family but, due to the Mother's persistent issues with alcohol and the length of time the Child had spent in foster care, it changed the permanency goal for the Child to the (admittedly conflicting) concurrent goals of reunification and termination of parental rights/adoption.

(13) On August 21, 2018, the Family Court interviewed the Child. The Child read to the court a letter he had written to the Mother expressing sadness and

frustration with the Mother's substance abuse issues. In response to questioning by the court, the Child admitted that it was not fair for him to keep waiting for the Mother to "get better." The Child accepted the possibility that he would be adopted and discussed his wishes for a future home with the court.

(14) On August 22, 2018, DFS filed its petition for termination of the Mother's parental rights based on her failure to plan. A termination of parental rights ("TPR") hearing was held on November 19, 2018, and December 5, 2018. At the hearing, the Family Court heard testimony from the DFS treatment worker, the DFS permanency worker, the Child's therapist, the foster-care and social worker for Children and Families First, the Mother, and the Child's court-appointed special advocate. The testimony reflected that (i) the Mother failed to accept she had a problem with alcohol abuse; (ii) the Mother had failed to address her substance abuse for over a year, despite encouragement from her team; (iii) the Mother could not assume custody and financial support of the Child due to her unstable housing and lack of employment; (iv) the Child's mental health continued to suffer from Mother's failure to seek serious help for her alcohol dependency; and (v) placement with the Child's maternal grandmother was not feasible because the placement had not yet received approval under the Interstate Compact on the Placement of Children ("ICPC"). Importantly, the Family Court heard from the Child's therapist who testified that the Child has a long history—predating DFS's involvement with the

8

family—of tending to Mother's needs and worrying about Mother's health. DFS's case was underscored by the fact that the Child, despite his advanced age and close bond with Mother, expressed curiosity about being adopted and becoming part of another family.

(15) At the conclusion of the hearing, the Family Court granted DFS's petition for termination of the Mother's parental rights. The Family Court found that DFS had shown by clear and convincing evidence that the Mother had failed to plan adequately for the Child's needs under 13 *Del. C.* § 1103(a)(5) and that DFS had made reasonable efforts to reunify the Child with the Mother. The Family Court also concluded that DFS had shown by clear and convincing evidence that the best interests factors under 13 *Del. C.* § 722 weighed in favor of termination of the Mother's parental rights.

(16) On appellate review of a termination of parental rights, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[4] We review legal rulings *de novo*.[5] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently

---

[4] *Scott v. DSCYF*, 2012 WL 605700, at *1 (Del. Feb. 27, 2012).
[5] *Wilson v. DFS*, 988 A.2d 435, 440 (Del. 2010).

9

supported by the record and are not clearly erroneous.[6] If the trial judge has correctly applied the law, our review is limited to abuse of discretion.[7]

(17) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[8] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[9] If the Family Court finds a statutory basis for termination of parental rights, the court must determine whether, under 13 *Del. C.* § 722, severing parental rights is in the best interests of the child.[10] It is incumbent on the petitioner—DFS in this case—to prove by clear and convincing evidence that there is a statutory basis for termination of parental rights and that the best interests analysis favors termination.[11]

(18) On appeal, Mother has submitted an eighteen-page narrative she asks us to consider. Perhaps because she wrote the narrative without the aid of counsel, it is difficult at times to follow. As we understand it, Mother's central arguments are that (i) it was not in the Child's best interests to terminate Mother's parental rights; and (ii) the record reflects Mother was, in fact, receiving treatment for alcohol dependency and otherwise addressing the elements of her case plan. Mother also

---

[6] *Id.*

[7] *Id.*

[8] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[9] *Id.* at 537. *See also* 13 *Del. C.* § 1103(a) (enumerating the grounds for termination of parental rights).

[10] *Shepherd*, 752 A.2d at 537.

[11] *Powell v. DSCYF*, 963 A.2d 724, 731-32 (Del. 2008).

makes new claims of stable housing, employment, and sobriety. As a preliminary matter, we cannot consider these new claims on appeal. An appeal is heard on the evidence submitted to the trial court.[12]

(19) When considering the eight best-interests factors under 13 *Del. C.* § 722, the Family Court largely adopted the analysis of those factors as presented by DFS and the Child's attorney. That analysis was supported by the record. The court found that one factor—Mother's wishes—weighed against termination and the remaining seven factors weighed in favor of termination. The court, in particular, focused on the unhealthy nature of the relationship between Mother and the Child. The Child's therapist testified extensively about the degree to which the Child suffers from "parentification," a process of role reversal whereby a child is obliged to act as parent to his own parent. The court also gave substantial weight to its interview with the Child and the fact that the Child indicated a willingness to be adopted to the court and others. When conducting its best interests analysis, the court carefully considered the statutory factors and made factual findings that adequately supported its decision that the termination of Mother's parental rights was in the best interests of the Child.

---

[12] Del. Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."); *Delaware Elec. Coop., Inc. v. Duphily*, 703 A.2d 1202, 1206 (Del. 1997) ("It is a basic tenet of appellate practice that an appellate court reviews only matters considered in the first instance by a trial court. Parties are not free to advance arguments for the first time on appeal.").

(20) The Mother's claims do not undermine the Family Court's thoughtful analysis and ultimate decision to terminate the Mother's parental rights. The Family Court found it in the Child's best interests to have a plan for permanency, which the Mother was unable to provide after eighteen months of case planning with DFS. The record is replete with references to the Mother's fits and starts at obtaining and benefiting from substance abuse treatment programs. But the Mother's own testimony at the TPR hearing—that she chose to remain incarcerated in order to receive substance abuse treatment—belies her current argument that she had demonstrated to the Family Court that she had adequately addressed the substance abuse component of her case plan. Moreover, the Mother does not dispute she lacked both employment and stable housing at the time of the TPR hearing.

(21) In additional to her central underlying arguments that it was not in the Child's best interests to terminate her parental rights and that the record supported a finding that the Mother was compliant with her case plan, the Mother takes issue with certain specific findings of the Family Court, claiming that they involve a misreading of the record. For example, the Mother claims that the Family Court said that the Mother only went involuntarily to treatment. But, the Family Court in fact found only that the Mother had enrolled in various treatment programs. Likewise, the Mother argues that the Family Court should have at the very least placed the

12

Child with his maternal grandmother. Yet, the Family Court could not have done that because it had not received approval under the ICPC to do so.[13]

(22) The Mother also complains that the court found that family members did not want visitation with the Child. In fact, the Family Court specifically encouraged DFS to arrange for the Child to visit with family members, especially his half-sister. To the extent the Mother argues the court improperly relied on the Child's therapist's testimony as it related to certain specific events, the court relied upon the therapist's testimony only as it concerned the Child's mental health. Finally, the Family Court could not have ordered DFS to place the Child with the Mother while she resided in shelters but was still struggling to maintain sobriety.

(23) Having carefully considered the parties' positions and the record on appeal, we can discern no abuse of discretion in the Family Court's factual findings and no error in the court's application of the law to the facts when terminating the Mother's parental rights. We therefore conclude that the Mother's appeal is wholly without merit and devoid of any arguably appealable issue. We are satisfied that the Mother's counsel made a conscientious effort to examine the record and the law and properly determined that the Mother could not raise a meritorious claim in this appeal.

---

[13] We note that the Child's maternal grandmother had not filed for guardianship at the time of the TPR hearing and that she is not precluded from doing so now.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice